Herman GONZALEZ

v.

The FIRESTONE TIRE & RUBBER COMPANY et al.

Civ. A. No. B–76–471–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

April 24, 1981.

**1102**

David T. Lopez, David T. Lopez & Associates, Houston, Tex., for Herman Gonzalez.

Earl S. Hines, Brown & Hines, Beaumont, Tex., Hugh E. Hackney, Fulbright & Jaworski, Houston, Tex., R. K. Lewis, Jr., Firestone Tire & Rubber Co., Akron, Ohio, for Firestone Tire & Rubber Co.

Marlin Thompson, Stephenson, Thompson & Dies, Orange, Tex., for Oil, Chemical and Atomic Workers, Local 4–836.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

This case is here on remand from the Court of Appeals for the Fifth Circuit and is currently before the Court on the defendants' motions for summary judgment. This Court has previously dismissed Herman Gonzalez's Title VII claim for failure to file suit within 90 days of the first of two right to sue letters. The plaintiff's Section 1981 claim was dismissed for failure to prosecute. On appeal, the Fifth Circuit reversed and remanded, holding that the Title VII claim was not barred because it was instituted within 90 days of the second right to sue letter, and that it was an abuse of discretion to dismiss the plaintiff's Section 1981 claim because his neglect did not amount to a " 'clear record of delay or contumacious conduct.' " *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 248 (5th Cir. 1980).

The plaintiff has agreed to dismiss his class allegations and his claim under 42 U.S.C. § 1981. With respect to the Title VII claim, the defendant urges two motions for summary judgment. The first seeks dismissal on the grounds that the plaintiff did not file a charge with the EEOC within 180 days of the alleged discrimination. The second motion attacks the merits of the plaintiff's claim.

A complete discussion of the facts appears in the Court of Appeals' decision and will not be repeated here except as necessary to the current motions. Herman Gonzalez, a Firestone employee, filed a discrimination charge with the EEOC in September, 1973, alleging that Firestone refused to transfer him into the Maintenance Training Program in August 1972, and refused to transfer him into the plant protection or lab sampler jobs in October, 1972. He also alleged that in September 1973 "8 temporary mechanics were hired from outside the plant" and that he was "not even asked to be upgraded to these temporary openings." EEOC Charge at 3.

The EEOC eventually found reasonable cause to believe that Firestone violated Title VII because Firestone continued to use unvalidated tests for the purpose of a validation study, and this had a chilling effect on minority applicants. *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d at 243.

Firestone argues that since Herman Gonzalez was denied transfer to the Maintenance Training Program in August, 1972, but did not file a charge with the EEOC until September, 1973, and is therefore barred by the 180 day limitation. The plaintiff argues that he was the victim of a continuing violation, or, in the alternative, that his claim should be equitably tolled.

The Fifth Circuit addressed the 180 day limitation issue stating that "Gonzalez's complaint sufficiently alleged a continuing violation" of Title VII.

On remand the district court should determine whether Firestone continued to base its selection of employees to receive job opportunities upon scores from an unvalidated battery of tests. If Firestone ceased to utilize such a testing system more than 180 days prior to the filing of Gonzalez's charge with the EEOC, then his Title VII complaint would be barred for failure to comply with 42 U.S.C. § 2000e–5(e) unless he could show

either that Firestone's continuing to administer the tests for the purpose of a validation study had a disparate effect upon the ability of Spanish-surnamed employees to obtain job opportunities or that Firestone denied him a promotion or transfer within the 180 day period on the basis of the prior testing. A failure to promote Gonzalez more than 180 days prior to the filing of his charge based on his prior test scores would not constitute a continuing violation.

*Id.* at 249–50.

The complaint alleges that the

Defendant Firestone Tire & Rubber Company by and through its officers, agents and employees, maintains a policy, practice, usage and/or custom at the Firestone Synthetic Rubber & Latex company facility at Orange, Texas, of discriminating against Spanish-surnamed employees by means of a discriminatory testing system which has and continues to deny to Plaintiff and members of his class hiring, promotional, earning, training, transfer, and job opportunities.

On remand, the plaintiff dismissed his class allegations and this fact may undermine the Fifth Circuit's conclusion that a continuing violation has been sufficiently alleged. Assuming the sufficiency of the complaint, however, the defendant's motion for summary judgment has merit and should be granted.

Attached to Firestone's first motion for summary judgment is an affidavit of Marvin Waddell, Personnel Manager at the Orange plant. He recites that he was either Personnel Manager, Manager of Industrial Relations, or Supervisor of Labor Relations at Firestone's Orange plant at all times pertinent to this action. According to the affidavit, Mr. Waddell has custody of the relevant records and has responsibility for "administering and supervising all training and equal employment opportunity affirmative actions at the plant." His affidavit states

4. Seniority is the primary qualification for admission into the Maintenance Training Programs. Since October, 1971,

neither educational background nor test scores have played any role in the selection of employees for participation in the programs. Firestone continued until January of 1973 to administer tests to Maintenance Training Program applicants as a part of a test validation study. However, test scores played no role in the selection of trainees after October, 1971. The testing system of which plaintiff has complained was discontinued entirely after January, 1973. The plaintiff, Herman Gonzalez, last took this test in November, 1972. The plaintiff, Herman Gonzalez, was not denied a transfer or promotion within 180 days prior to his filing his discrimination charge with the Equal Employment Opportunity Commission in September, 1973.... All promotions and transfers in the maintenance and training programs awarded subsequent to 1973 were not a product of the former testing system, but were based entirely on seniority.

Affidavit of Marvin Waddell, p. 1–2.

The plaintiff's response to the motion consists of a four page memorandum and a copy of Herman Gonzalez's EEOC charge. The plaintiff argues that the "EEOC charge shows sufficient facts to apply the theory of 'continuing effect of past discrimination.'" Plaintiff's Memorandum at 3. The plaintiff also argues that the defendant's affidavit is contradicted by the defendant's own exhibits, specifically, copies of the collective bargaining agreements in effect. Lastly, the plaintiff urges the Court to apply the doctrine of "equitable tolling" because "the plaintiff held back on his charge while he was being told by company officials that he was being considered for other transfer opportunities and on the fear that the filing of a charge could lead to his dismissal." *Id.* at 3.

Under Rule 56(e), F.R.Civ.P.,

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must

set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. *See Federal Deposit Insurance Corp. v. Dye*, 642 F.2d 837, 841 (5th Cir. 1981); *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 114 (5th Cir. 1978).

This Court is bound by the Fifth Circuit's opinion in this case. If there is no genuine question of fact as (1) "whether Firestone continued to base its selection of employees to receive job opportunities upon scores from an unvalidated battery of tests;" (2) "that Firestone's continuing to administer the tests for the purpose of a validation study had a disparate effect upon the abilities of Spanish-surnamed employees to obtain job opportunities;" or (3) "that Firestone denied him a promotion or transfer on the basis of prior testing" then summary judgment is proper.

■ Based on the pleadings, deposition, and affidavits on file, there is no question that Firestone ceased using the test scores in selecting applicants for the training program in October, 1971, more than 180 days prior to the filing of the EEOC charge. The plaintiff has not provided affidavits to the contrary, nor does he even allege that Firestone used the scores. The plaintiff's EEOC charge, attached as an exhibit to the plaintiff's response, does not even suggest that the tests were considered. Upon scrutinizing the record, the only evidence of the tests being used in selection is the defendant's own exhibit No. 2, a copy of the collective bargaining agreement in effect in 1972. The 1972 agreement between Firestone and the Oil, Chemical and Atomic Workers states that selection will be based on (*inter alia*) "grades attained on a battery of tests selected *and validated* ..." "Defendant's Exhibit No. 2, page 50). The tests given here were not validated and therefore could not be used under the terms of the collective bargaining agreement. Despite this provision as to validation, the provision of the contract is not a specific fact showing that the tests were used, and does not raise any genuine issue of fact for trial. *See* Rule 56(e), F.R.Civ.P.

As to the second inquiry, whether Firestone's administering the unvalidated tests had a disparate effect on the ability of hispanic employees to obtain job opportunities, there is likewise no genuine issue of fact. Since the plaintiff has dismissed the class allegations, the question now is whether Firestone's administering the unvalidated tests had a disparate effect on the ability of Herman Gonzalez to obtain job opportunities. There is no genuine question of fact because it is undisputed that the plaintiff took the test and scored well. There could be no "chilling effect" as to him.

The third inquiry directed by the Fifth Circuit is whether Firestone denied the plaintiff a transfer within the 180 day period on the basis of prior test scores. It is uncontroverted that these test scores were not used after October, 1971.

### EQUITABLE TOLLING

■ The Fifth Circuit has recently and unequivocally stated that the 180 day provision "is a precondition to filing suit in district court, but it is not related to the subject matter jurisdiction of the court. The provision is subject to equitable tolling." *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir., 1981) (en banc). Earlier decisions in this circuit had recognized the doctrine of equitable tolling in three distinct situations.

First, the Supreme Court has upheld the tolling of the time period during the pendency of an action before a state court which had jurisdiction over the subject matter of the suit, but which was the wrong forum under state law .... Second, this court has upheld deferring the commencement of the running of the 180 day period until the claimant knew or should have known the facts which would give rise to his Title VII claim.... Third, this court has indicated that equitable modification is appropriate when the EEOC misleads a complainant about the nature of his rights under Title VII ....

*Chappell v. Emco Machine Works Co.,* 601 F.2d 1295, 1302–03 (5th Cir. 1979). *See Nilsen v. City of Moss Point, Miss.,* 621 F.2d 117, 120 (5th Cir. 1980).

The facts of this case do not fit within any of the three categories. First, no suit was brought in any court within 180 days of the last act of alleged discrimination. Second, the plaintiff does not claim that he was unaware of the facts supporting his Title VII claim. Third, the EEOC did not mislead the plaintiff about his rights under Title VII. The original panel decision in *Coke* is not to the contrary. In that case, company officials represented to the plaintiff that he would be reinstated. The employer there presented no affidavits to the contrary, and summary judgment was held improper. 616 F.2d 785, 791. In this case, however, the plaintiff urges that equitable tolling apply because "he was being told by company officials that he was being considered for other transfer opportunities" and he feared "that the filing of a charge could lead to his dismissal." Plaintiff's Memorandum at p. 3. Defendant's affidavits show that no representations or guarantees were made to the plaintiff, and the plaintiff has failed to raise any genuine issue of fact by his failure to supply opposing affidavits.

Thus, there is no genuine issue as to any material fact and, as a matter of law, there was no continuing violation of Title VII by Firestone's failure to transfer the plaintiff into the maintenance training program, or any other job in 1972. His claim is therefore barred by 42 U.S.C. § 2000e–5(e). Likewise, there is no genuine issue as to any material fact pertaining to equitable tolling, and as a matter of law, that doctrine does not apply to this case.

## THE MERITS

As a separate and independent basis for the grant of summary judgment, the Court finds that the defendant is entitled to judgment as a matter of law on the merits, as there are no genuine issues of material fact for trial.

The plaintiff complains of a discriminatory testing system, yet it is uncontroverted that the plaintiff ceased using the test scores for selection of candidates for the maintenance training program in 1971. The use of the tests for a validation study could not have resulted in a "chilling effect" on the plaintiff because he *did* take the test, and scored well. The defendant's affidavits establish that the plaintiff was not transferred into the maintenance training program because he lacked seniority. There is no claim that the seniority system operates to discriminate against Spanish-surnamed employees, and even if there was such a claim, it would be barred absent an attack on the *bona fides* of the seniority system. *United Airlines v. Evans,* 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571 (1977).

In his memorandum, the plaintiff argues that his sworn EEOC charge contains specific facts to support a disparate treatment case and prevent summary judgment. He claims that he was bypassed for transfer because he, and other Mexican-Americans "were considered 'troublemakers' as a result of their efforts to break into the maintenance programs and out of the labor group." Plaintiff's Memorandum at p. 4. First, the plaintiff's complaint contains no such allegations. The complaint alleges discriminatory testing. The EEOC's investigation and decision relates solely to the use of unvalidated tests. Second, even if plaintiff alleged a disparate treatment case in his complaint, and could prove a prima facie case, the defendant's affidavits and plaintiff's opposing affidavits leave no genuine issue of material fact as to the defendant's "legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Lastly, the plaintiff has offered no opposing affidavits to demonstrate that the proffered reason was not the true reason for the employment decision. The defendant's affidavits in this regard do more than show a legitimate non-pretextual reason. The affidavits of the personnel manager establish that the transfers were based primarily on

seniority. Although hispanics comprise approximately 3.75 percent of the labor force in the relevant Standard Metropolitan Statistical Area, 8.16% of those admitted into the maintenance training program have been hispanic. Furthermore, hispanics comprise 3.46 percent of Firestone's total work force and are well represented in the highest paying production and maintenance department. There is no issue of fact as to whether Firestone's refusal to transfer Herman Gonzalez due to lack of seniority was pretextual.

Since there are no genuine issues of material fact, and the defendant is entitled to judgment as a matter of law, the defendant's motion for summary judgment is granted.